Good morning, Ms. Tatarin. We'll hear from you first. Good morning. May it please the Court, Counsel Denise Tatarin representing Rodney Waldoch. This is a case involving Mr. Waldoch's entitlement to long-term disability benefits through Medtronic's self-insured disability plan. Mr. Waldoch has had diabetes since age 10, has been on insulin for over 40 years. While diabetes is a serious condition for any diabetic patient, Mr. Waldoch is not the average diabetic patient. He's had many complications because of his diabetes, including hypoglycemic unawareness, erratic blood sugars, neuropathy, retinopathy, to name a few. And most importantly, he's developed severe antibodies, which a male endocrinologist described as the highest level of antibodies he had ever seen in his 20-plus years of practice. Several physicians have opined that because of those antibodies, it could be the cause of his erratic blood sugars and the difficulty that he has controlling them. Because of this, he's needed to monitor his blood sugars very frequently, and in spite of monitoring them frequently, they're still out of control and affect him significantly. His doctors, even while he was working at Medtronic, warned him for several years that he needed to keep his stress down because it would exacerbate his condition. And they took many steps to try to keep him working. Even going back to 2004, there were accommodations being made or requested, including a reduced work week. After he stopped working at Medtronic, he was then referred to the Advanced Diabetes Clinic at Mayo Clinic. Medtronic approved and paid him long-term disability benefits through May of 2010, and they found that he was not able to do the duties of a buyer position, and specifically included multitasking, interaction with management and peers, budgeting, meeting deadlines, and attention to detail. Social Security also found him disabled and that his impairments could reasonably be expected to produce the symptoms that he was having, which included problems with mood, demeanor, and productivity. The Administrative Law Judge found that Mr. Waldock had a substantial loss in his ability to meet the demands of basic work activities on a sustained basis. Yet, with the worsening of Mr. Waldock's condition and continued erratic glucose, Medtronic refused to pay benefits beyond May 2010 when the definition changed to any occupation. A vocational review at that time came up with only four jobs that met the criteria, and those were jobs, the type of jobs, that Medtronic had already determined that he could not perform. All four were either at the same level or higher position than the buyer position. Medtronic has argued that there were all sorts of jobs identified. In fact, there were over 100 jobs identified by the vocational consultant, but all were eliminated except for four. And as I stated, those four were not the type of positions that Mr. Waldock would be able to perform based on Medtronic's former decision. Medtronic acknowledges, at least in its brief, that he would need to work in a less stressful position, but this is not what the decision by Hartford and the reviewers was based on, and that was not taken into account by the vocational consultant. No one paid any attention to this when this was decided, that the vocational consultant's decision was inconsistent with the prior decision made. Focusing on the standard of review, Medtronic has the burden showing that the default standard of review does not apply. No one that was granted discretionary authority under the plan made any of the decisions here. The plan has a provision that specifically addresses who has discretion, and none of those individuals made a decision. There was an affidavit provided by Laura Urschel late in the game during the summary judgment briefing claiming that Roger Chizik, who did have authority, made the decision. There was no direct testimony, no direct evidence from Mr. Chizik, nor was there anything in the record that provided any analysis by Mr. Chizik. In fact, there was no analysis by anyone at Medtronic. All we have in the record is a statement, yes, we agree. Medtronic admits that Hartford basically handled everything, handled all the claims handling, made the decision, made the recommendation to Medtronic, and Medtronic basically rubber-stamped that decision. Medtronic argues that it should be able to rely on a third-party administrator. However, the cases that support that is where the employer has given the authority to the third-party administrator. Here we have an agreement between Hartford and Medtronic that specifically says Hartford is not the fiduciary here. Medtronic will be the one conducting the full and fair review. Hartford will not take on that responsibility. Medtronic cannot argue that it can rely on Hartford to conduct the full and fair review when its own agreement with Hartford says otherwise. Where is that? That is in the administrative services agreement, and I don't have a site in front of me, but there's an administrative services agreement that we have cited to in the briefs, which is- Is that the same as the long-term disability benefit administration agreement? I don't know how it's entitled. It's not the plan. There's a separate administrative services agreement. Agreement between Hartford and Medtronic. Medtronic, right. And where would I go in that agreement to find- Well, there is within-I mean, it kind of identifies-it's a several-page document, and it goes through and identifies what Hartford will do, but there is a page that we cite to in our brief that specifically say that Hartford is not the fiduciary and that it will not be conducting the full and fair review, that that is Medtronic's responsibility. Well, but what is your position as to what Medtronic has to do then if Hartford does a review? Medtronic is the party that was to conduct the final review and review the full claim file and provide the last decision. How do you know they didn't do that? There's nothing in the record that indicates that, and, in fact, if you look at-we've cited to showing when only the medical records, it states, were sent to Medtronic on the 17th of August by UPS. A decision was already sent from Laura Urschel going back to Hartford the following day at 2 o'clock. So even if they had received the record the next day, there was very little time for anyone to look at it, analyze it. It appears to me that all they did was review the recommendation, a four-page recommendation from Hartford, and said, yes, we agree. And, again, all that was sent according to the record was- What are you saying, they have to write a full opinion in order to satisfy their obligation? I say that in order for a court to look at whether the party who has discretion and be able to defer to their decision, there has to be some analysis. There has to be something in the record that supports their review. Well, what if they just agree with Hartford's analysis? Well, there needs to be- What if they actually have the records for a healthy period of time and they study them carefully and say, well, if we were to write an opinion, we'd write the same thing Hartford wrote, so there's no point in another opinion. We'll just say we agree with Hartford. Given that this is ERISA and it's a record review, administrators have the obligation to document what they've done. And there's just nothing in the record here that shows that there was anything done by Medtronic, nor in particular by anyone that had discretion, granted discretion under the policy. Well, so I'm still trying to understand what exactly you say they have to do. Would it be enough if they said we studied all the records with care and read Hartford's opinion and we agree with that opinion? I think there has to be some explanation for the decision in the record. There has to be something that shows what they did. And if you look at, for example, the Wilcox Eighth Circuit case, that says that a plan administrator just cannot accept what a reviewing physician says. They have to show that that decision logically flowed from the evidence in the record. Hartford didn't even do that on the final review. There was no analysis by Hartford. They basically accepted the last review by Dr. Cooper and said, well, we're going to follow this because he reviewed all the medical records. There was no analysis by Hartford or Medtronic as to whether that decision by Dr. Cooper logically flowed from the evidence or whether it even addressed all the issues it should have addressed. Are you saying that a plan administrator, if it determines that it doesn't have the resources, cannot retain assistance in investigating, in gathering, then retaining, of course, its obligation to make the final decision? No, I'm not saying that. What if a plan administrator is just not set up to and doesn't have the resources, the manpower, personnel to conduct the investigation and to assemble the material? What's wrong with the plan administrator getting some help in that area, retaining its final decision-making authority and obligation? There's nothing wrong with that, but then there has to be something that delegates all of that authority to a third-party administrator. There are many cases where, with a fully insured plan, the employer has delegated everything to the insurance company, and the insurance company has the ability to make all of the decisions. I'm not talking about delegating decision-making. I'm just talking about assistance as arguably occurred here with Hartford and this agreement with Hartford to do this work and then make the recommendation for the plan administrator to consider. I don't think there's anything wrong with that, Your Honors. Isn't that what happened here? Again, the problem here is that there's an agreement between Hartford and Medtronic that Medtronic would be conducting the full and fair review for the final appeal. That did not occur. Also, as I mentioned, the Wilcox case requires that there be some analysis that you have to determine whether that doctor's opinion logically flowed from all of the evidence that was there, and we say that it clearly did not. I've used up the time I had, and I'll reserve the rest. Thank you. Mr. Peretz, we'll hear from you. Good morning, Your Honors. Jonathan Peretz for the defendant appellee in this matter, Medtronic. I wish to stress three points. First, Medtronic denied Mr. Waldock's long-term disability claim because it came to the reasonable conclusion that he was not totally disabled, that he was not totally disabled from performing any occupation in the U.S. economy. The plan clearly gave Medtronic that discretion. It also allowed Medtronic to delegate functions to a claim administrator. In fact, the plan itself, which is attached to our brief as an addendum, goes into great detail about the role of the claim administrator. It clearly provides that a claimant will submit medical evidence in support of their claim, satisfactory to the retained claim administrator. So that's exactly what happened in this case. Medtronic reserved the ultimate decision on appeal for itself. At the same time, it retained Hartford to perform claim administration functions. The record in this case spans five volumes. They gave Mr. Waldock multiple appeals, multiple opportunities to present medical evidence in support of his claim and submitted that evidence to three separate independent endocrinologists, board-certified endocrinologists who are with the expertise to determine whether Mr. Waldock's diabetic symptoms rendered him totally disabled. They reviewed that evidence in detail. The record is clear. And in terms of explaining the rationale for the decision, in each case, the Hartford, first of all, documented its workup in detailed daily notes of its activities. It assembled all of the evidence. It obtained conclusions from the medical reviewers, and it communicated the results of that investigation to Medtronic. A decision was made by Medtronic, and that decision was communicated to Mr. Waldock in detailed letters by the Hartford, setting forth the rationale in full compliance with the ERISA requirements. When you talk about communication and you say that Hartford communicated with Medtronic, are you just talking about the final recommendation that's been described as the August 17th transmittal, or are there other communications going on as this evidence is coming in and there's sort of back and forth? Yes, Your Honor. The claim was first denied back in 2009. That led to the first appeal. An appeal record was assembled. An independent review was retained. The independent reviewer and Hartford came to the conclusion that Mr. Waldock wasn't entitled even to the first level of disability, the ENEOC level. That went to Medtronic. Medtronic reversed and said, no, we are willing to give him his own OCK disability based on his inability to perform his own work at Medtronic. What kind of review went into that from Medtronic? That was in June of 2010, and the record clearly shows that at that time Medtronic got a 10-page summary of medical records from the Hartford, which in detail summarized the medical reviews, the steps that were taken, the rationale presented. The record is clear that that was sent to Medtronic. It's also clear that Ms. Urschel, who was the intermediary between Mr. Chizik, who was the designated decision-maker with the discretion by Medtronic, Ms. Urschel gathered that information, sent it immediately to Mr. Chizik, scheduled a conference call between Mr. Chizik, Ms. Urschel, and the Hartford reviewers to discuss the claim. And the record has always shown in the Hartford's file notes that Medtronic made that decision to reverse ONOC over their recommendation and then to continue the NEOC question for additional analysis. So between that decision and then we'll call the August 17-18 decision, was there communication back and forth between Hartford and Medtronic about updates on this? In other words, is there any other evidence of review by Medtronic of what was going on with the claim? I believe there is. The summary detail report is in the record, and I believe it does show periodic communications between Ms. Urschel and the Hartford as the claim was being examined by the Hartford. But during that time, really, the work was being done by the medical reviewers, collecting the records, getting the records to the reviewers, obtaining the vocational expert analysis. There were altogether three independent reviews here by endocrinologists, as well as two vocational analyses by two different vocational experts. So that was really what was going on during that time. In 2011, which is what Ms. Tatarin was referring to, when the final appeal was being decided, the record shows that there was an e-mail on August 16th at 3.22 p.m. with a four-page update of the summary. That is not the only time that Medtronic reviewed the record in this case. They had that prior ten-page analysis, which was complete as of that time. There's never been an allegation, and Ms. Tatarin has always had that ten-page review. There's never been an allegation that Hartford left information out, it wasn't complete in that analysis. That analysis was clearly presented to Medtronic, and they made their decision at that time. What about her point that the UPS shipping was only done the day of the decision and the implication that your man couldn't have reviewed all the material? What do you say to that? Well, first of all, I think the most important thing is that they got a four-page summary by e-mail on the 16th, which is two days before Ms. Urschel communicates to Hartford, quote, we agree with the recommendation to uphold the denial. So they had the four-page analysis two days before the decision was made. The file, according to the UPS record, is actually in the record. The file was sent to Medtronic by UPS at 11 p.m. I'm sorry, at 2 p.m. on August 17th, and the decision was made about 24 hours later on the 18th. So they certainly had the opportunity to receive that file during that 24-hour period. I think the most important thing is they delegated the claim preparation function, not the ultimate decision. We don't claim that Medtronic delegated to Hartford the ultimate decision, the fiduciary decision to make the decision. That was clearly reserved to Medtronic. Is that in the agreement between Medtronic and Hartford? Yes, Your Honor. That agreement, there is nothing inconsistent between the plan itself, which details everyone's responsibilities. It details Medtronic's responsibility. It details the retained administrator's responsibility.  Excuse me? Is there only one agreement? Yes, Your Honor. So did I identify the agreement correctly earlier, the long-term disability benefit administration agreement? Yes, Your Honor. It is in the appendix at 16. Okay. What page of the agreement, not the appendix page, but what page or paragraph of the agreement clarifies that the ultimate decision remains with Medtronic and its responsibility to evaluate? Yes. Where do we find that? Page 10 of the agreement, the appendix at 25. It's really throughout this agreement. But here it says, We agree to assist you in a non-fiduciary capacity with denied claims on appeal. All employees for whom a claim is denied will be informed in writing that they have a right to appeal to you for additional review and final determination of their claim. All denials will direct the employee to submit the appeal in writing and any additional information to us, the Hartford, for receipt and acknowledgement on your behalf. Upon receipt of an appeal, we will review any information received and evaluate it according to the terms of the plan. So there's a direct incorporation of the plan in the agreement. It's not as though these documents were written, you know, ignorant of each other. So Medtronic, were you still answering the question? It goes on. It specifies that if the appeal requires additional information, medical information, or specialty review, we, the Hartford, will make reasonable and good faith attempts to obtain that information. Whether or not we have all the anticipated information, we will provide you with a written recommendation within 35 days and so forth. So the bottom line is this is a lengthy agreement. It's clearly written, fully cognizant of the terms of the plan, and intended to be consistent with the plan. I guess you would also refer to the last paragraph where it says we are not a fiduciary and we do not make final claim determinations on appeal. Exactly. So, again. I take the argument from the appellant to be that if Medtronic retains this decision-making authority, that it has some obligation to do more than what it did here. And it must indicate somehow in the administrative record that it did more than rubber stamp the Hartford. What do you say to that? And what obligation does Medtronic have to do more than just read the opinion and say we agree? Well, we found nothing in the case law, nothing in ERISA, that imposes some super-obligation on an employer or plan sponsor in this case to second-guess the judgment of the retained administrator. I think the case law says that if it was apparent to Medtronic from looking at the record that the administrator dropped the ball, didn't address a key piece of evidence, made some clear error, then Medtronic would be subject to question if it rubber stamped that decision. Here there is no evidence to that. Do you think Medtronic has an obligation even to review the whole record that was before Hartford? I think the record is that they did review the record. They reviewed a summary of the records. Do you think they have that obligation? I think they have the right to rely on a retained administrator's decision. I think arguably in this case they went beyond their strict obligations under ERISA because if in this case Medtronic is certainly a sophisticated employer, there is nothing that precludes an unsophisticated employer from having the same system. In fact, we would want an employer to do what Medtronic did in this case, hire professionals to thoroughly evaluate the claim. When you say there is some authority that says that under certain circumstances there might be a problem with rubber stamping, if they had reason to believe the administrator, what authority did you find in that? Well, I think the only case that is cited by the plaintiff in this case that says that is the Wilcox case. All right. So you're talking about Wilcox. Yeah. But this case is extremely different from Wilcox. There were multiple errors in that case. In fact, the court in that case points out very clear errors and omissions by the administrator that were overlooked and were rubber stamped. That case is miles apart from this case. This case is much more similar to the Coker case involving an insulin-dependent diabetic seeking long-term disability. His treating physicians recommended disability. The reviewing physicians disagreed. The Social Security Administration recommended found for disability. Again, the reviewing physicians disagreed. Really identical. I find it difficult to distinguish that case at all. And in that case, the employer rejected the claim, and that was sustained on appeal. The bottom line here is that Medtronic bent over backwards to give Mr. Waldock every procedural opportunity to present evidence. First of all, they accepted the claim when it was clearly untimely. The Hartford pointed that out in their initial claim workup. Medtronic overlooked that, allowed the claim to proceed. Hartford then recommended denial of any form of disability, ONOC or ENEOC. Medtronic said, no, we'll give him ENEOC through May of 2010. They allowed multiple appeals. Even after the claim was denied on the second appeal in 2011, Ms. Tatarin pointed out that it appeared to her that perhaps Dr. Cooper had failed to consider Dr. Sequist's letter. He clearly had tried to contact Dr. Sequist. When that question came up, no one hesitated to say, let's have Dr. Cooper review Dr. Sequist's letter. He did that, and that's the final decision that Ms. Tatarin was referring to. So at every step of the way, every question was answered by Medtronic or by the Hartford about the procedure. Every piece of evidence was submitted and considered and thoroughly considered by Dr. Cooper. All you have to do is look at Dr. Cooper's analysis to see the detail with which he considered the questions posed to him. He says he reviewed the entire record. There was a subsequent questioning of that by Ms. Tatarin. The record reflects that the Hartford documented that question, that they went back and checked the record, confirmed that all the files had been sent to Dr. Cooper. And Dr. Cooper himself says, I read the entire record. So there's simply nothing in the record that contradicts the medical reviewer's opinions, the Hartford's recommendation, or Medtronic's acceptance of that recommendation. All the evidence is simply that Mr. Waldock failed to prove his case. He has the burden to show that his symptoms from his diabetic condition render him unable to work in any occupation. That was the point on which the independent medical reviewers all agreed that he had not shown that. They accepted that he had symptoms of hypoglycemia, that he had hypoglycemic unawareness, that he had insulin antibodies. All of that was accepted. This is not a case where there's evidence in the record of these symptoms and the medical reviewers simply choose to turn a blind eye to evidence in the record. That's not what happened here. Thank you, Mr. Peretz. We appreciate your argument. We'll hear rebuttal. Ms. Tatron, I think you have some time. Thank you. I'd like to talk about Dr. Cooper's report, because even if it's under a deferential review, what the court is required to look at is the final decision that was done, and that's by Dr. Cooper. The Eighth Circuit Corey case, K-H-O-U-R-Y at 615F3946, is a case that holds that the court should be looking at the final decision. Dr. Forden's and Dr. Mielke's opinions were not even considered. Is that the case in your briefing? It's not, unfortunately. I did argue that you need to focus on the final report, but I did not provide that citation. Dr. Forden's and Dr. Mielke's reports that were done before were part of the earlier process and were not discussed, considered, or even mentioned in the final denial letter. So if we look at Dr. Cooper's report, it shows that he was only sent medical records, and that's at 1139 of the record. That means he was not provided the appeal letter, a lengthy appeal letter, which explained the basis of why Mr. Waldock felt the decision was unreasonable. It did not provide the basis for his disability, and it also would not have provided that long employment history that showed how he tried and struggled to keep working and the many, many letters that his physicians wrote describing the difficulties he was having. Also, while Dr. Cooper recognizes that he has these blood sugars that are all over the place, his reasoning that he can work full-time is that he doesn't lose consciousness. But losing consciousness should not be what it takes in order to determine that somebody is having difficulty working. But I would like to point out that Dr. Kudwa, in his December 2010 note, which I think is an important note at 991 of the record, said that Mr. Waldock had required assistance for his hypoglycemia one to three times in the last six months. And he also reported in his May 11, 2011 letter that during the Mayo Clinic study, Mr. Waldock had 22 episodes of hypoglycemia, and one of them required IV intervention. Okay. Well, thank you very much. Thank you. We appreciate the argument from both counsel. The case is submitted and we'll file an opinion in due course. Thank you. Very good.